IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHARLOTTE VILCHES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:21-CV-15-KFP |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff seeks review of the Social Security Administration's decision denying her application for Social Security Disability and Supplemental Security Income benefits. For the following reasons, the Court AFFIRMS the Social Security Commissioner's decision.

**I.    STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The inquiry is limited to determining whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for the Commissioner's, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is

supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.   PROCEDURAL BACKGROUND

Plaintiff was 47 years old when the Administrative Law Judge rendered a decision finding her not disabled. R. 7, 20, 22. Plaintiff alleged disability due to posttraumatic stress disorder, depression, anxiety, scoliosis, right ankle pain, panic attacks, high blood pressure, agoraphobia, asthma, a hiatal hernia, and a right shoulder injury. R. 56. The Commissioner denied her initial application, and she requested a hearing before an ALJ. R. 95, 107. After a hearing, the ALJ issued a decision finding Plaintiff not disabled. R. 7, 22. The Appeals Council declined review, making the Commissioner's final decision ripe for judicial review. R. 1–6; *see* 42 U.S.C. § 405(g).

## III.  THE ALJ'S DECISION

The ALJ found Plaintiff has severe impairments of obesity, cervical radiculopathy, sciatica, degenerative joint disease of the left knee, right ankle tendonitis, MDD, and PTSD. R. 13. The ALJ noted Plaintiff also has asthma and a hiatal hernia, though those medical issues, considered singly or together, are not severe. *Id.* Likewise, Plaintiff had a twisted left ankle, which the ALJ declared not an impairment because Plaintiff produced no evidence of ongoing treatment or limitations. *Id.* The ALJ next found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 13.

The ALJ then concluded Plaintiff has the residual functional capacity to perform light work with certain limitations. R. 15. Specifically, the ALJ acknowledged Plaintiff

cannot crawl, climb ladders, ropes, or scaffolds, reach overhead, operate a motor vehicle as a work condition, or safely work around extraordinary hazards. *Id.* Likewise, the ALJ found Plaintiff cannot handle "more than occasional exposure to extreme temperatures, high humidity/wetness, vibration, or respiratory irritants." *Id.* The ALJ similarly recognized Plaintiff should work with data and objects rather than people, though Plaintiff is capable of occasional superficial interaction with the public. R. 15–16. Lastly, the ALJ determined Plaintiff would miss one day of work per month because of her symptoms, side effects from her medications, and necessary treatment. R. 16.

Nevertheless, the ALJ concluded Plaintiff can frequently "balance, stoop, kneel, crouch, and climb ramps and stairs . . . [and] reach in all other directions [except overhead] bilaterally." R. 15. Moreover, Plaintiff can remember detailed, uninvolved instructions and carry them out using common sense. *Id.* Plaintiff similarly can engage in repetitive routine tasks in a goal-oriented setting with little diversion. *Id.* Finally, Plaintiff can participate in superficial and task-related interactions with supervisors and colleagues. R. 16.

After considering Plaintiff's experience as a fast food worker and cashier checker, the ALJ determined Plaintiff could not perform past relevant work. R. 20. Given Plaintiff's age, education, experience, and RFC, the ALJ found Plaintiff could perform other jobs in the national economy, including callout operator, marker, and router. R. 20–21. The ALJ concluded Plaintiff had not been under a disability from the alleged onset date, March 19, 2016, through the ALJ's decision on September 29, 2020. R. 21–22.

## IV.     DISCUSSION

Plaintiff challenges the Commissioner's decision on the following three grounds: (1) "[t]he ALJ failed to properly evaluate the medical opinion evidence in determining Plaintiff's mental residual functioning capacity;" (2) "[t]he ALJ failed to properly evaluate the subjective statements of Ms. Vilches and lay witness'[s] statements regarding Plaintiff's mental impairments;" and (3) "[t]he ALJ erred by not requesting a psychological consultive examination." Doc. 18 at 3.

### A.     The ALJ Properly Evaluated the Medical Opinion Evidence.

The regulations applicable to claims filed after March 2017 provide:

> [T]he ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)-(c) (2020). [In particular, a]n ALJ must explain how he considered the factors of supportability and consistency. [*See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).] The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. *Id*. The ALJ may but is not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

*Nix v. Saul*, No. 4:20-CV-790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021).

An ALJ need only explain the consideration of the factors on a source-by-source basis. The regulations do not require the ALJ to precisely explain the consideration of each opinion within the same source. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). The ALJ "is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a

specific opinion.[] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing *Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Additionally, an ALJ "is not required to base [the] RFC on a doctor's opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053-JHE, 2022 WL 860190, at *6–7 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014); 20 C.F.R. § 404.1520c(a)). Indeed, "an ALJ's RFC assessment need not 'match or mirror the findings or opinions of any particular medical source . . . because the reasonability of assessing the RFC rests with the ALJ.'" *Boone v. Kijakazi*, No. 1:21-CV-34-JTA, 2022 WL 4133288, at *5 (M.D. Ala. Sept. 12, 2022) (citation omitted); 20 C.F.R. § 416.946. If the ALJ complied with the regulations and substantial evidence supports his evaluation of the medical opinions, the court should affirm. *Pritchard v. Barnhard*, 140 F. App'x 815, 819 (11th Cir. 2005).

### 1.     The ALJ did not have to entirely adopt Dr. Estock's opinion.

Plaintiff argues the ALJ erred by disregarding some of Dr. Estock's opinions, which the ALJ found to be "generally persuasive." Doc. 18 at 5; R. 19. Essentially, Plaintiff contends the ALJ improperly determined Plaintiff's mental RFC by not adopting, verbatim, Dr. Estock's impairment opinion. *See* Doc. 18 at 5. Plaintiff maintains the ALJ's omission is reversable error because every example job mentioned in the ALJ's opinion requires a higher level of reasoning than Dr. Estock stated Plaintiff can handle. Doc. 18 at 6–7. Thus, according to Plaintiff, the ALJ's eschewing of Dr. Estock's opinion regarding Plaintiff's

ability to carry out detailed instructions is dispositive of whether jobs in the national economy exist in significant numbers that the Plaintiff could perform given her RFC.

Dr. Estock opined Plaintiff "would be expected to understand, remember, and carry out short simple instructions and tasks but would likely have difficulty with more detailed tasks and instructions." R. 69. Moreover, Dr. Estock postulated Plaintiff's ability to carry out short and simple instructions was not significantly limited, but Dr. Estock found Plaintiff's ability to carry out detailed instructions was moderately limited. *Id.* But in assessing Plaintiff's mental RFC, the ALJ held:

> With ordinary supervision and consistent with occupations that can be learned in up to 30 days, the claimant remains able to perform the mental demands of work that requires her to remember detailed (but uninvolved) instructions and apply commonsense understanding to carry them out, as well as make related decisions to deal with problems involving no more than a few concrete variables on or from standardized situations.

R. 15. Thus, while Dr. Estock opined Plaintiff was moderately limited in her ability to carry out detailed instructions, the ALJ held Plaintiff could "remember detailed (but uninvolved) instructions." *Id.* The ALJ found Plaintiff could perform the jobs of callout operator, marker, and router. R. 20–21. Plaintiff argues these jobs have a reasoning development level of two, which require Plaintiff to have the ability to understand and carryout "detailed" instructions.[1] Doc. 18 at 6.

First, in this circuit there is no "apparent conflict between one's limitation to follow simple instructions and positions that require the ability to follow 'detailed but uninvolved'

---

[1] Level 2 jobs actually require "detailed *but uninvolved*" instructions. DOT, App. Appendix C - Components of the Definition Trailer, 1991 WL 688702) (emphasis added).

instructions." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1319–20 (11th Cir. 2021). Therefore, Plaintiff's argument fails.

Second, Plaintiff is correct that the ALJ did not adopt, precisely, Dr. Estock's findings despite declaring Dr. Estock's opinion generally persuasive, but the Plaintiff is incorrect that the ALJ may not deviate from an otherwise persuasive medical opinion. Plaintiff points to no Social Security regulation requiring an ALJ to adopt the entirety of a medical opinion. For good reason, the Code of Federal Regulations explicitly acknowledges an ALJ does not have to analyze each opinion within a single source. *See* 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate. As this Court recently noted in another case, the ALJ's RFC determination need neither mirror nor match a single doctor's opinion. *See Boone*, 2022 WL 4133288, at *5. Accordingly, the ALJ did not err by not adopting, word-for-word, Dr. Estock's opinion about Plaintiff's ability to follow instructions.[2]

---

[2] In passing and without caselaw support, Plaintiff argues the ALJ rejected, creating reversible error, Dr. Estock's opinion that Plaintiff needed to work in a well-spaced area, required "tactful, constructive and non-threatening" supervision, and could only tolerate "infrequent and gradually introduced" changes to her work environment. Doc. 18 at 7–8. Yet, for the same reasons above, Plaintiff's unsupported assertion is unavailing. By merely finding a medical source's opinion "generally persuasive," an ALJ does not abdicate their authority—and obligation—to reach an RFC determination based on a thorough review of the entire evidentiary record. An ALJ does not properly discharge her duty by finding a single medical opinion persuasive and then deferring verbatim to that physician's findings. The ALJ need not adopt every part of an opinion that the ALJ finds generally persuasive. *See Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ.") (citations omitted). In any event, Dr. Estock's opinion does not suggest that a well-spaced work environment would be a *required* work-place limitation for Plaintiff; he suggests it would be best, but not that it is mandatory. R. 90–91 ("a well-spaced work

**2. The ALJ's Absence RFC is Consistent with Dr. Estock's Opinion.**

Plaintiff claims the ALJ erroneously rejected Dr. Estock's opinion that Plaintiff would likely miss one to two days of work per month because of her impairments. Doc. 18 at 8. Plaintiff argues the ALJ did not analyze the supportability or consistency of Dr. Estock's absence opinion before rejecting it. *Id.* Meanwhile, the Commissioner notes the ALJ found Plaintiff was likely to miss one day of work per month owing to her impairments, which is within the one-to-two day range Dr. Estock provided. Doc. 22 at 5–7. Plaintiff retorts the ALJ explicitly rejected Dr. Estock's absence opinion, thus the ALJ's finding of an absence RFC within Dr. Estock's postulated range is still erroneous. Doc. 27 at 1.

A detailed description of every part of a medical source opinion's supportability and consistency (or lack thereof) is not required. To be sure, the ALJ was required to evaluate those two factors—supportability and consistency—on the source level per the regulations, but she was not required to give a detailed explanation of the discounted weight of this part of Dr. Estock's opinion. *See* 20 C.F.R. § 404.1520c(b)(3)) ("An ALJ must explain how he considered the factors of supportability and consistency. The ALJ must explain in her decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors."). Nevertheless, the ALJ did address supportability and consistency by saying: "The claimant has chronic mental health symptoms but stopped

---

environment would be best for maximum concentration[]"). *See Whitten v. Comm'r of Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 796–97 (11th Cir. 2019) (holding ALJ did not err by omitting limitation that claimant would function "best" in a "well-spaced work setting" after giving state agency opinion "great weight," because the opinion "did not say that she required a well-spaced work setting to function at all").

8

treatment and reported no more than moderate symptoms, such that I find it unlikely the claimant would miss work more than once a month due to symptoms and/or treatment. I am unpersuaded by this prior administrative finding, inasmuch as I find it speculative and lacking substantial evidentiary support." R. 19. The ALJ, thus, explained that the opinion regarding absences greater than once per month lacked supportability in the record, rendering this portion of the opinion unpersuasive to her. *Id.* And, the ALJ demonstrated that the treatment records were inconsistent with a finding of missing work more than once per month. *See id.* While the ALJ could have been more precise in describing her analysis of these factors, such specificity is not required. *See Thaxton v. Kijakazi*, No. 1:20-CV-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.") (citation omitted); *Frye v. Comm'r of Soc. Sec.*, No. 6:21-CV-741-DCI, 2022 WL 1045719, at *5 (M.D. Fla. Apr. 7, 2022) ("The ALJ may not have used the word 'supportability,' but he discussed the record with respect to the inconsistency of the opinions within the physician's own records, and the Court finds that to be adequate.") (citation omitted).

Determining a claimant's RFC and ability to work is within the province of the ALJ, not doctors. *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) (stating RFC is matter reserved for ALJ and, while a medical opinion is considered, it is not dispositive). An ALJ may "distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional

limitation." *Johnson v. Saul*, No. CV418-115, 2020 WL 858891, at *2 (S.D. Ga. Jan. 31, 2020), *report and recommendation adopted*, No. CV418-115, 2020 WL 865407 (S.D. Ga. Feb. 19, 2020). There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination. *Williamson v. Kijakazi*, No. 2:20-CV-772-SMD, 2022 WL 2257050, at *3 (M.D. Ala. June 23, 2022) (citations omitted).

The ALJ concluded, based on the record, including Plaintiff's fairly unremarkable clinical presentation, that only an absence limitation at the low end of the range Dr. Estock proposed was appropriate—one day per month, not two days per month. R. 19. The ALJ found the absence determination "excessive given the objective medical evidence," which the ALJ reviewed in total. *Id.* The ALJ made note of Plaintiff's most recent failure to pursue mental-health treatment after September 2018. *Id.* at 18. Up to that point, while she complained of depression symptoms, the medical records reflect she did not have suicidal ideation and had intact judgment. *See* R. 287–91, 298, 300. While she had difficulty sleeping, Plaintiff's medical records reflect she had good personal hygiene and normal concentration skills. R. 268; 286. Although she avoids crowds of people, Plaintiff engaged in some social interaction, including talking with a neighbor and playing games. R. 298. On this record, the ALJ was not clearly wrong to assess Dr. Estock's absence limitation as excessive and deviate from it. That the ALJ did not adopt, *in toto*, Dr. Estock's opinion on this point does not impugn the RFC on this record. The ALJ's RFC determination is supported by substantial evidence.

## B.     The ALJ Correctly Weighed the Testimony of Plaintiff and Lay Witnesses.

"A claimant may establish that [s]he has 'a disability through h[er] own testimony of pain or other subjective symptoms.'" *Nye v. Comm'r of Soc. Sec.*, 524 F. App'x 538, 543 (11th Cir. 2013) (citing *Dyer*, 395 F.3d at 1210). When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of her alleged symptoms or (2) evidence establishing her medical condition could be reasonably expected to give rise to her alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Once the plaintiff establishes she has an impairment that one could reasonably expect would produce her alleged symptoms, the ALJ must evaluate (1) the claimant's daily activities; (2) the "duration, frequency, and intensity" of the claimant's symptoms; (3) "[p]recipitating and aggravating factors"; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms. *Nye*, 524 F. App'x at 543 (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). Next, the ALJ evaluates the plaintiff's statements in light of the evidence and considers any inconsistencies. 20 C.F.R. § 404.1529(c)(4). If the ALJ decides not to credit a claimant's testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). Subjective complaint credibility is within the province of the ALJ, *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citation omitted), and the Court cannot disturb that finding so long as he

11

clearly articulates it and supports it with substantial evidence. *Id.* (citing *Foote*, 67 F.3d at 1561–62).

The ALJ received and considered statements from Plaintiff's husband and from Plaintiff's friend regarding their impressions of her impairments and her daily activity limitations. R. 19–20. In his consideration of this evidence, the ALJ noted that neither individual is a trained medical professional capable of ascertaining medical signs and symptoms. R. 19–20. While he did not elaborate on this basis for discounting their assertions, their espoused opinions, much like the subjective complaints of Plaintiff, were not consistent with the objective medical evidence before the ALJ.

The ALJ explained that Plaintiff's subjective complaints differed from the record of "fairly unremarkable clinical presentation outside of evaluations conducted in the pursuit of disability benefits." R. 18. The record reflects some childhood mental health treatment, but also reflects Plaintiff's failure to pursue treatment more recently. R. 15–18. The medical records reflect that Plaintiff presented with generalized anxiety disorder in April 2016 after being robbed at gunpoint. R. 306–07. But, it is not until the following year, 2017, that the medical records reflect any additional care. Then, only an emergency room presentation noting Plaintiff's request for evaluation for depression is noted. R. 313. Notably, it was not until April 2018 that Plaintiff again pursued mental-health-related treatment.[3] At that time, she reported symptoms of depression, but she had intact judgment,

---

[3] As part of her (unfavorable) application, Plaintiff had a consultative physical examination in January 2018. At that time, she relayed complaints of anxiety, depression, [and] ankle pain, among other things. R. 260–65. The ALJ noted the examiner's opinion regarding Plaintiff's capacity for work activities is also generally consistent with the RFC the ALJ set forth. R. 20; *see* R. 269 ("able to understand the basic directions[;] appears to have some limitations with the interpersonal skills required to relate to others in a work setting[;]

appropriate affect, and normal motor activity and speech. R. 284–91. The medical provider made an initial diagnostic impression of "PTSD; MDD." R. 289; 291. She was back for treatment in September 2018 and reported anxiety and panic attacks. R. 292–98, 300. Although she expressed a desire to receive further treatment, Plaintiff's treatment ended in January 2019 after ninety days passed without Plaintiff having any further visits. R. 282.[4]

In reviewing Plaintiff's reported daily activities, the ALJ found they were not limited to the extent one might expect given Plaintiff's subjective complaints (and those of the third parties). Plaintiff occasionally cooks and shops, when accompanied. R. 40, 213–14, 269, 292. Although she also testified she does not leave her house, she did recount social activities in which she engages, including spending time with family, playing games, and talking with friends. R. 40, 215, 298. This, too, provided the ALJ a supported basis to discount Plaintiff's subjective complaints. *See Dyer*, 395, F.3d at 1209–10 (ALJ properly considered inconsistency between claimant's reported daily activities and subjective complaints when discounting testimony); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–39 (11th Cir. 2011) (substantial evidence supported ALJ's discrediting claimant's pain complaints because it was inconsistent with claimant's testimony of daily activities and treating and examining physicians' records).

---

able to sustain the attention needed to do repetitive tasks but has limitations with the ability to handle the day-to-day pressures of a work environment.").

[4] Plaintiff argues she was unable to seek further treatment because she could not afford it nor find a provider to come to her home due to agoraphobia. R. 40–41. At the hearing, Plaintiff testified she could not afford treatment because only her husband works and earns income. *Id.* In response to the ALJ's inquiry regarding what efforts she made to look into the availability of community resources, Plaintiff testified that she has tried to find someone to come to her home because she "cannot go out" of the house, but she has found no such provider. R. 41. While Plaintiff reported that she had been diagnosed with agoraphobia, this diagnosis does not appear in the medical records. *See* R. 260–65.

That the ALJ could have provided further explanation as to why he found Plaintiff's subjective complaints or those of the third-parties uncompelling does not mandate a remand for him to do so. Indeed, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's subjective] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner*, 421 F. App'x at 938–39. The ALJ's consideration of the subjective complaints and statements along with Plaintiff's unremarkable objective medical treatment records and her own reported daily activities provided a reasonable basis for the ALJ to discredit the lay witness and personal accounts. The ALJ's determination was not clearly wrong. The ALJ found Plaintiff's subjective complaints, which were in line with the third-party statements, inconsistent with the medical evidence. That basis for discount is supported in the record and sufficient to withstand remand.

> **C.    The ALJ Did Not Err by Failing to Order Psychological Consultive Examination.**

The ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citation omitted). This duty generally requires the ALJ to assist, when necessary, in gathering medical evidence from Plaintiff's medical sources and to order a consultative examination when one is necessary to make an informed decision. 20 C.F.R. § 404.1512(b). Nonetheless, "the claimant bears the burden of proving that [s]he is disabled, and, consequently, he is responsible for producing evidence in support of h[er] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted).

14

"Ordering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)). Before the Court will remand a case for further development of the record, the Plaintiff must show the ALJ's failure to develop the record led to evidentiary gaps resulting in unfairness or clear prejudice. *Graham*, 129 F.3d at 1423 (citing *Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir. 1995)). At a minimum, clear prejudice "requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (citation omitted).[5]

Here, the ALJ commented at the hearing that he anticipated ordering a psychological consultive examination, but this statement did not bind her to do so. The ALJ's informed

---

[5] Social Security regulations provide:

> Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> (1) The additional evidence needed is not contained in the records of your medical sources;
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b).

written decision demonstrates a thorough review of the evidence in the record, and Plaintiff has not shown an evidentiary gap. Instead, Plaintiff relies solely on the ALJ's statement that she *planned* to order the examination. That alone, without Plaintiff showing evidentiary gaps or that the ALJ's decision was not based on a thorough review of adequate available evidence, does not require remand.

Whether to order a consultive examination is a matter properly left to the ALJ's sound discretion. *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338–39 (M.D. Ala. 2001); *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002). The ALJ here apparently changed her mind about needing a consultive examination upon a review of the record after Plaintiff's hearing. Although Plaintiff may disagree with the ALJ's revised decision, that does not render it reversable error. Absent a specific showing by Plaintiff that the ALJ's failure to order the consultive examination left holes in the evidentiary record, this Court will not disturb the ALJ's decision. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Plaintiff points to no specific evidentiary deficiency here; thus, the Court affirms the ALJ's refusal to order a psychological consultive examination.

## V.   CONCLUSION

Accordingly, it is ORDERED:

1. The Commissioner's decision is AFFIRMED.

2. A final judgment will be entered separately.

DONE this 19th day of October, 2022.

                                        <u>/s/ Kelly Fitzgerald Pate</u>
                                        KELLY FITZGERALD PATE
                                        UNITED STATES MAGISTRATE JUDGE